IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LAUREL N. W.,[1]**

      **Plaintiff,**

v.

      **Civil Action 2:21-cv-3971**
      **Chief Judge Algenon L. Marbley**
      **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Laurel N. W., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 6). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI in November 2018, alleging that she has been disabled since September 14, 2018, due to Bipolar Disorder, borderline personality disorder, Post-Traumatic Stress Disorder, anxiety disorder, depression, sciatica, two

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

herniated discs, asthma, diabetes mellitus II, and irritable bowel syndrome. (R. at 54, 187-193.) Plaintiff's applications were denied initially in February 2019 and upon reconsideration in July 2019. (R. at 53-118.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 120-124.) Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held on May 20, 2020. (R. at 28-52.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) Administrative law judge Jennifer Smiley (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on July 24, 2020. (R. at 9-27.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> At the hearing, [Plaintiff] testified that her back was not as bad as it had been a year earlier, but that she could not stand longer than 20 minutes, sit for more than 45 minutes, or walk for more than 15 to 20 minutes. She did aquatic therapy for a while and that helped her back pain significantly, but it has not improved since then. She said she had just started an independent aquatic program before the stay-at-home order due to COVID-19 went in place. [Plaintiff] testified that she spends most of her time in bed watching TV or playing video games, doing puzzle books, and using her phone. She said she can not stand long enough to cook very much. She testified that she was managing her mental health issues with medications, but she feels depressed and isolated, has mood swings and panic attacks with irrational fear that someone is going to hurt her. She also testified that after her initial back injury, she had to use a walker or wheelchair and stopped driving entirely for a while due to back spasms, and now only does it when she has to.

(R. at 17.)

### III. MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's physical impairments as follows:

> [Plaintiff] reported an injury to her low back in September 2018. An MRI in October 2018 showed small disc protrusions at L3-4 and L4-5 with significant stenosis. She continued to work, though she presented to the ER on several occasions with low back pain. In April 2019, she presented to the ER with complaints of low back pain with radiation to her legs. A physical exam found tenderness to palpation of the muscular low back, strength 3/5 in her legs, normal reflexes and sensation, and negative straight leg raise bilaterally. [Plaintiff] received medication and was discharged the next day. A follow up MRI showed mild to moderate degenerative disc disease at L3-4 and L4-5.
>
> [Plaintiff] continued to receive treatment for back pain, including physical therapy and pain medication. On May 7, 2019, she received a guided lumbar steroid injection. [Plaintiff] received additional lumbar injections in June and July 2019. In June 2019, [Plaintiff] had a severely antalgic gait with use of a walker for ambulation. She had diminished reflex at the patella on the left and positive straight leg raise testing bilaterally. An EMG study on July 11, 2019, showed no evidence of lumbosacral radiculopathy, plexopathy, or myopathy. After Jason Barfield, M.D., examined [Plaintiff] for chronic back pain on October 11, 2019, he wrote that [Plaintiff's] "pain and examination findings appear disproportionate to her diagnostic testing results."
>
> [Plaintiff] attended physical therapy in November and December 2019. This treatment appears to have greatly improved her symptoms. On November 7, 2019, she described pain as 5/10, and ranging as high as 7/10, but by December 16, 2019, she reported pain at 3/10 and ranging as high as 5/10. In November, she ambulated with a wheeled walker, but by December 16, 2019, she had only mild deficits in strength in her legs. [[Plaintiff's] physical therapist noted that [Plaintiff's] lower extremity strength had greatly improved, and that she had normal sensation and slightly limited range of motion in her legs.
>
> Although [Plaintiff] had used a wheeled walker in November 2019, by December 20, 2019, her physical therapist noted that she was walking with a decreased cadence but no assistive device; similar notations were made on January 9, February 12, and February 26, 2020. An exam on January 3, 2020, found [Plaintiff] had normal range of motion, normal motor and sensory exam, and no focal deficits. She was able to ambulate without problem. On March 11, 2020, [Plaintiff] presented to her primary care physician to follow up. She continued to take Robaxin and Neurontin for muscle spasms and reported improvement in her back pain with water therapy, although she had not progressed to land based therapy.

(R. at 17-18 (internal citations omitted).)

The ALJ summarized the relevant medical records concerning Plaintiff's mental health impairments as follows:

> [Plaintiff] has a long history of mental impairments. She has multiple past admissions for psychologically based symptoms and she reported depression since age 13. Throughout the alleged period of disability, however, [Plaintiff] has received conservative mental health treatment, consisting of medications prescribed by her primary care physician. There is no indication of recent inpatient treatment or ER visits related to psychologically based symptoms. In January 2020, [Plaintiff] did not have a psychiatrist or counselor.
>
> [Plaintiff] attended two therapy sessions with Shirley Verhey, LPCC, in May 2020, who recommended [Plaintiff] seek formal mental health treatment from a psychiatrist. She also stated that it would be difficult for [Plaintiff] to be successful in competitive employment.

(R. at 18 (internal citations omitted).)  The ALJ summarized and weighed the relevant medical source opinions as follows:

> Marc Miller, Psy. D., performed a consultative examination of [Plaintiff] on June 24, 2019, after which he opined that [Plaintiff] had no limitation "in regard to understanding, remembering and carrying out instructions" with "some difficulty" in her ability to interact with others, "some difficulty" in regard to attention span and concentration, and difficulty in regard to stress and pressure. I find this opinion is somewhat persuasive, as Dr. Miller supported his opinion with examination findings. His vague statements as to [Plaintiff's] abilities ("some difficulty") do not, however, adequately address [Plaintiff's] functionality. The evidence of record, including Dr. Terry's assessment, is more consistent with the above "moderate" limitations and related residual functional capacity.
>
> State agency psychological consultant Jennifer Swan, Psy.D., found [Plaintiff's] anxiety and depression were severe, but that there was insufficient evidence to substantiate the presence of a mental disorder. This opinion is not persuasive, as it is inconsistent on its face. In addition, the evidence is consistent with a finding that [Plaintiff's] mental impairments result in moderate limitations, as found by Dr. Terry.
>
> The assessment of State agency medical consultant Yeshwanth Bekal, M.D., is also not persuasive. Dr. Bekal found that [Plaintiff's] spine disorder was severe, but that there was insufficient evidence to assess her functional limitations. While [Plaintiff's] back impairment is severe, the evidence of record is consistent with the

4

> above residual functional capacity, as [Plaintiff] has experienced ongoing pain despite treatment.
>
> State agency psychological consultant Karen Terry, Ph.D., found [Plaintiff] had no limitation in understanding, remembering or applying information, moderate limitation in interacting with others, moderate limitation in concentrate, persist or maintain pace, and moderate limitation in adapt or manage oneself. I find Dr. Terry's assessment is generally persuasive. Dr. Terry supported her conclusions with explanation and her opinions are consistent with [Plaintiff's] relatively conservative treatment for her mental impairments.
>
> Steve McKee, M.D., found [Plaintiff] could perform a restricted range of light exertional work. I find this opinion is partially persuasive. Dr. McKee supported his conclusions with explanation and references to the medical record, but based on [Plaintiff's] testimony, and her ongoing treatment for her back impairment, the evidence of record is more consistent with the above limitation to a range of sedentary exertional work.
>
> In June 2019, John Backwood, D.C., wrote that [Plaintiff] needed to use a walker or a wheelchair and was unable to care for herself without assistance. I find Dr. Backwood's statements are not persuasive. As a chiropractor, Dr. Backwood is not an acceptable medical source. Furthermore, he did not provide adequate support for these extreme limitations, and the evidence of record is not consistent with a need to use a wheelchair, or the other extreme restrictions indicated by Dr. Backwood.

(R. at 19-20 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On July 24, 2020, the ALJ issued her decision. (R. at 9-27.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (R. at 14.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff engaged in

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.    Is [Plaintiff] engaged in substantial gainful activity?
    2.    Does [Plaintiff] suffer from one or more severe impairments?
    3.    Do [Plaintiff's] severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

substantial gainful activity until January 2019. (*Id.*) The ALJ found, however, that there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. (*Id.*) The ALJ found that Plaintiff has the severe impairments of degenerative disc disease; bipolar disorder; anxiety disorder; and personality disorder. (R. at 15). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, frequently balance, and occasionally stoop, kneel, crouch or crawl. [Plaintiff] must avoid all workplace hazards including unprotected heights, moving mechanical parts, and operating motor vehicles. She can carry out simple instructions, make simple work-related decisions, tolerate occasional changes in a routine work setting, and have occasional interaction with supervisors and co-workers and no interactions with the public.

(R. at 16.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a nurse assistant. (R. at 20.) Relying on the VE's testimony, the ALJ concluded at step five that Plaintiff can perform other jobs that exist in significant

---

4. Considering [Plaintiff's] residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering [Plaintiff's] age, education, past work experience, and residual functional capacity, can [Plaintiff] perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

numbers in the national economy. (R. at 20-21.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since September 14, 2018. (R. at 21.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'"

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff sets forth three contentions of error: (1) the ALJ failed to properly evaluate Plaintiff's impairments under Listing 1.04; (2) the ALJ's RFC is not supported by substantial evidence; and (3) the ALJ failed to recognize and consider Plaintiff's neuropathy/radiculopathy as a medically determinable impairment. (ECF No. 11 at PAGEID ## 1805-1816.) The Court will address each of Plaintiff's arguments in turn.

**A.    Listing 1.04.**

A plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The plaintiff has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the [plaintiff]." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost establishes a disability" under Listing).

The starting point for the Court's analysis is Listing 1.04, as in effect at the time of the ALJ's decision, which provides as follows:

> 1.04    Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), *resulting in compromise of a nerve root* (including the cauda equina) or the spinal cord. With:
>
> A.     Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> > or
>
> B.     Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> > or
>
> C.     Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App, 1, §1.04A (emphasis added). The ALJ found that Plaintiff's back impairment failed to meet Listing 1.04, and provided this rationale:

> The medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04 for disorders of the spine. Moreover, there is no evidence that [Plaintiff's] back disorder has resulted in an inability to ambulate effectively, as defined in 1.00B2b.

(R. at 15.)

Plaintiff contends that the ALJ erred in concluding that her impairments did not meet Listing 1.04A. (ECF No. 11 at PAGEID ## 1805-1808.) In order to demonstrate that she met Listing 1.04A, Plaintiff was required to establish each of the following seven criteria:

> (1)    A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

9

>     (2)     resulting compromise of a nerve root (including the cauda equina) or the spinal cord,
>
>     (3)     evidence of nerve root compression characterized by neuro-anatomic distribution of pain,
>
>     (4)     limitation of motion of the spine,
>
>     (5)     motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss,
>
>     (6)     if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), and
>
>     (7)      the impairment has lasted or can be expected to last for a continuous period of at least 12 months.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Plaintiff submits that the medical evidence demonstrates nerve root compression characterized by neuro-anatomic distribution of pain and limitation of motion of the spine. (ECF No. 11 at PAGEID # 1807.)  Plaintiff cites to a string of evidence which she contends demonstrates the various other criteria relevant to Listing 1.04A identified above.  (*Id.* (citing R. at 400, 454, 458, 498, 500, 581, 665, 1080, 1118-1119, 1440, 1701).)  A review of this evidence, however, reveals that it does not support Plaintiff's contention because Plaintiff has failed to identify **any** evidence of nerve root compression, as required under Listing 1.04A.  This ends the judicial inquiry as to Listing 1.04A.  *Angela K. C. v. Comm'r of Soc. Sec.*, No. 2:20-CV-5184, 2022 WL 109345, at *7 (S.D. Ohio Jan. 12, 2022) ("Because Plaintiff did not show evidence of nerve root compression, the ALJ's finding that Listing 1.04 was not satisfied is supported by substantial evidence.").

Plaintiff further asserts, however, that the ALJ's analysis is inadequate and cites *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011), for the proposition that when performing a Listing analysis, an ALJ must "actually evaluate the evidence, compare it to

Section 1.04A of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." (ECF No. 11 at PAGEID ## 1806, 1808-1809.) This argument is similarly not well taken.

In *Reynolds*, the ALJ found that the claimant had severe mental and physical impairments at step two, but at step three, the ALJ analyzed only whether the claimant's mental impairments met or equaled a Listing, and completely failed to assess whether the claimant's physical impairments met or equaled any Listings. *Id.*, 424 F. App'x at 415-416. The Sixth Circuit Court of Appeals found that remand was appropriate because the ALJ "skipped an entire step of the necessary analysis." *Id.* at 416. In this case, by contrast, the ALJ did not fail to consider whether Plaintiff's physical impairments met any listed impairments. Rather, the ALJ explicitly considered Listing 1.04, concluding that "[t]he medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04 for disorders of the spine." (R. at 15.)

While this analysis may have been brief, when combined with his discussion of the record evidence related to Plaintiff's spinal impairments, it provides sufficient articulation for adequate judicial review. Moreover, on several occasions, the Sixth Circuit has upheld an ALJ's sparse step three determination when an ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a Step Three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time")). Such is the case here. Accordingly, the Undersigned finds that the ALJ did not err when analyzing whether Plaintiff met the criteria for Listing 1.04.

In any event, as discussed above, Plaintiff did not point to evidence of all requirements for Listing 1.04A. Therefore, Plaintiff cannot satisfy her burden of demonstrating that she meets the criteria for Listing 1.04A. Thus, even if the ALJ had erred when analyzing Listing 1.04, any such error would have been harmless. For these reasons, Plaintiff's first assignment of error is not well taken.

**B.     RFC Determination.**

For her second assignment of error, Plaintiff argues that "the ALJ's [RFC] determination is not supported by substantial evidence because it fails to consider [Plaintiff's] limitations in concentration, persistence, and pace. (ECF No. 11 at PAGEID ## 1810-1813.) Plaintiff highlights the opinion of State agency psychological consultant, Karen Terry, Ph.D., noting that Dr. Terry "clearly opined that [Plaintiff] would have difficulty maintaining attention and concentration; would have difficulty performing at a consistent pace without interruptions; and may require flexibility in his breaks." (*Id.* at PAGEID # 1811.) Plaintiff argues that "the ALJ failed to include these limitations in her [RFC] determination," and that the ALJ "failed to acknowledge that [Plaintiff] may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." (*Id.* at PAGEID ## 1811-1812.)

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to

12

any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, the ALJ sufficiently explained how the record evidence supported the RFC she assessed, including the ALJ's consideration of Plaintiff's moderate limitations in concentration, persistence, or pace. In setting forth the RFC, the ALJ offered a lengthy discussion of the record evidence, which included consideration of Plaintiff's treatment records, objective testing and examination results, the effectiveness of treatment and medication, Plaintiff's testimony, Plaintiff's activities of daily living, and the opinion evidence. As it relates to Plaintiff's concentration, persistence, or pace, the specifically found that Plaintiff "has a moderate limitation," citing record and opinion evidence in support. (R. at 16.) Specifically, the ALJ cited Plaintiff's June 2019 psychological evaluation by Dr. Marc E. W. Miller, who found that

13

Plaintiff had "moderate" limitations in concentration due to anxiety, as well as records from April 2019 and October 2019 which showed that Plaintiff "had intact attention and concentration." (R. at 16 (citing R. at 852, 1297, 1423.)  Finally, the ALJ also cited the opinion of Dr. Karen Terry, a State agency psychologist who found that Plaintiff "had moderate limitations in this area of functioning." (R. at 16 (citing R. at 77, 94).)  Accordingly, the ALJ's conclusion is well supported by substantial evidence.

Significantly, Plaintiff does not maintain that the ALJ ignored or misinterpreted critical evidence or that she erred in relying upon the opinion evidence in formulating Plaintiff's RFC. Instead, Plaintiff cites record evidence that she contends *could* have supported a more restrictive RFC, and argues that the ALJ "fails to convey" Plaintiff's limitations. (ECF No. 11 at PAGEID ## 1811-1812.)  But where the record could support two different conclusions, "the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-cv-1078, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, No. 1:17-cv-1078, 2018 WL 2416232 (N.D. Ohio May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if

14

substantial evidence would support the opposite conclusion.'") (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Accordingly, under these circumstances, Plaintiff's second statement of error is not well taken.

C. **Plaintiff's Neuropathy/Radiculopathy.**

Regarding Plaintiff's final argument, the Undersigned finds that Plaintiff is mistaken that the ALJ's failure to recognize Plaintiff's neuropathy/radiculopathy as medically determinable impairments at step two of the evaluation process constitutes reversible error. (ECF No. 11 at PAGEID ## 1814-1816.)

As the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) ("**Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless**. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added; internal quotations and citations omitted).

Plaintiff argues that even though the ALJ found that Plaintiff had multiple severe impairments, "[t]he evidence of the record clearly supports a finding that [Plaintiff's] neuropathy/radiculopathy is also a medically determinable impairment," as "[i]t has more than a

15

'minimal effect' on her ability to perform basic work activities and the record consistently documents the diagnoses of [Plaintiff's] neuropathy/radiculopathy." (ECF No. 11 at PAGEID # 1815 (citing R. at 45, 400, 1080, 1440, 1701).) As a preliminary matter, the Undersigned finds this to be a mischaracterization of the record, as the only medical diagnosis of neuropathy or radiculopathy in the records cited by Plaintiff was in a progress note from October 7, 2019, which simply lists "Lumbar radiculopathy" without any discussion or explanation. (R. at 1701.) At the same time, however, in another of the records cited by Plaintiff, Dr. Michael J. Rozen opined on September 20, 2019 that despite Plaintiff's "longstanding back pain problems with radicular pain complaints into her left lower extremity . . . [m]edical documentation is insufficient to support diagnosis of sciatica, left side or right side, based on objective findings" and that Plaintiff "has numerous, extensive Waddell findings." (R. at 1440-1445.) Regardless, Plaintiff concedes that the ALJ found that Plaintiff had multiple severe impairments at step two of the evaluation process, and rightfully proceeded to the remaining steps of the disability determination. (ECF No. 11 at PAGEID # 1815 ("[T]he ALJ determined that [Plaintiff] had the following severe impairments: degenerative disc disease; bipolar disorder; anxiety disorder; and personality disorder.").) This ends the step two analysis which Plaintiff puts before the Court.

But even assuming, *arguendo*, that the ALJ should have discussed Plaintiff's neuropathy/radiculopathy at step two, as Plaintiff contends, such error was harmless because the ALJ expressly discussed diagnostic testing which showed "no evidence of lumbosacral radiculopathy," as well as Dr. Jason Barfield's opinion that Plaintiff's "pain and examination findings appear disproportionate to her diagnostic testing results." (R. at 18 (citing R. at 1372-1373, 1416).) Plaintiff is therefore wrong to suggest that the ALJ "summarily disregarded" Plaintiff's complaints of neuropathy/radiculopathy. (ECF No. 11 at PAGEID ## 1815-1816.)

Rather, the ALJ acknowledged and discussed Plaintiff's complaints of nerve pain, the related diagnostic findings, and the unchallenged medical opinions that her complaints were inconsistent with the objective findings. The ALJ therefore properly supported her decision with substantial evidence from the record. *Rosshirt*, 2020 WL 4592393 at *3. Accordingly, Plaintiff's third assignment of error is not well taken.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

|  |  |
|---|---|
| **DATED: June 14, 2022** | **/s/** *Elizabeth A. Preston Deavers*<br>**ELIZABETH A. PRESTON DEAVERS**<br>**UNITED STATES MAGISTRATE JUDGE** |